UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GENERALI—U.S. BRANCH dba THE GENERAL INSURANCE COMPANY OF TRIESTE & VENICE—U.S. BRANCH<br><br>v.<br><br>THE COMMERCE INSURANCE COMAPNY,<br>   Defendant. | CIVIL ACTION<br>NO.  4:20-10692-TSH |

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 33)

**MAY 7, 2021**

**HILLMAN, D.J.,**

This is a declaratory judgment action between two insurers, The Generali Insurance Company of Trieste & Venice ("Plaintiff" or "Generali") and The Commerce Insurance Company ("Defendant" or "Commerce") concerning their respective priorities of coverage and liability for an underlying tort action in state court.

After hearing and for the following reasons, Generali's motion for summary judgment as to priority of coverage (Docket No. 33) is **_granted, except as to recovery of attorney's fees and costs_**.

### Background

In December 2017, Susannah Gale rented her West Stockbridge property to Laura and Paul Kampa through Homeway.com, a vacation rental website popularly known as Vrbo.  On or about

1

December 2, Laura Kampa slipped and fell on an allegedly defective or dangerous stairway on the premises. She sustained serious injuries, including traumatic brain injury. She and her husband sued Gale in Berkshire County Superior Court for negligence and loss of consortium, seeking to recover at least $627,000 in medical expenses attributed to the accident. *Laura Kampa and Paul Gale v. Susannah* Gale, Case No. 1976CV00060 (the "Kampa Action"). That case is set for trial on October 12, 2021.

Gale's legal expenses and potential indemnification costs in the Kampa Action are potentially covered by two insurance policies. As an owner who rented her property on Homeaway.com, Gale is covered by HomeAway Holding's Commercial General Liability Policy No. GL00001, which has a $1,000,000 limit per occurrence. That policy was issued by Generali. Gale is also covered by her personal homeowner's insurance policy, Policy No. H BGQGDB, which was issued by Commerce. The Commerce Policy has a $600,000 limit per occurrence.

Gale timely reported the Kampa Action to both insurers. Generali appointed counsel to defend Gale and—at the time the Complaint in this matter was filed on April 8, 2020—had already incurred more than $34,000 in legal expenses. Commerce refused to contribute to the defense costs and takes the position that Generali is the primary insurer and it is the excess insurer as to the Kampa Action.

Generali seeks a declaratory judgment that Generali and Commerce are co-primary insurers as to the Kampa Action because the operative "Other Insurance" clauses in the policies are mutually repugnant; that Generali and Commerce must contribute equally to Gale's defense, and Commerce must reimburse Generali for its share of those defense costs Generali has already incurred; and—if Gale is found liable—that Generali shall pay 62.5% and Commerce 37.5% of indemnification costs on a pro-rata basis, until Commerce's lower policy limit is exhausted.

Generali further prays for the cost of this suit. Commerce opposes the motion and seeks a declaratory judgment that the Generali Policy is primary and that the Commerce Policy is excess insurance as to the Kampa Action.

**Procedural Posture**

This case will proceed in two stages. First, the Court must determine the respective priority of coverage between the Commercial General Liability Policy issued by Generali and the Homeowners Insurance Policy issued by Commerce. Second, the Court must find whether there is coverage available to Susannah Gale for the Kampa Action through the Commerce Policy, the Generali Policy, or both.

**Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute precludes summary judgment if it is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can meet its burden either by "offering evidence to disprove an

element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F.Supp.2d 47, 52 (D. Mass. 2005) *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548).  Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute.  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Analysis

The Court begins its analysis by identifying and comparing the relevant language in each policy concerning other insurers.

### *The Commerce Policy*

Generali and Commerce agree about the operative language on primary versus excess insurance carriers in the Commerce Policy:

> "**8**. **Other Insurance — Coverage E — Personal Liability.**  This insurance is excess over other valid insurance and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy."
>
> (Section II. Conditions, Docket No. 34-7 at 37).

### *The Generali Policy*

Generali and Commerce do not agree about the operative language on primary versus excess insurance carriers in the Generali Policy.  As originally issued, the Generali Policy contains the following language:

4

**4. Other Insurance**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A of this Coverage Part, our obligations are limited as follows:
   a.  **Primary Insurance**
       This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in paragraph **c.** below.
   b.  **Excess Insurance**
       (1) This insurance is excess over:
           (a) . . .[losses from aircraft/cars/watercraft];
           (b) Any other primary insurance available to you covering liability for damages arising out of your premises or operations, or the products and completed operations, other than insurance for liability arising out of the ownership, maintenance or use of property under the terms and for the duration of a "rental agreement" also covered under this policy; and
           (c) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
       (2)  When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
       (3)  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
           (a)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
           (b) The total of all deductible and self-insured amounts under all that other insurance.
       (4) We will share the remaining loss and "claim expenses", if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.
   c.  **Method of Sharing**
       If all the other insurance permit contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
       If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of

> its applicable limit of insurance to the total applicable limits of insurance of all insurers."
>
> (Docket No. 34-2 at 15).

Generali contends that this Other Insurance clause was amended when it issued the "Amend Other Insurance Clause" endorsement. (Docket No. 34-3) (the "OI Endorsement").

Under the terms of the OI Endorsement, the Generali Policy is primary unless the policy holder has another primary insurance policy that also covers liability for damages arising out of the covered premises, in which case the Generali Policy is considered excess insurance. (*Id*). If the other primary insurer also "purports to be excess by virtue of competing "other insurance" clauses similar to the clause set forth in section 4.b above, then those clauses are mutually repugnant, resulting in co-primary insurance that is shared by the method described in paragraph d. below." (*Id*. at 3). If there is another primary insurer, the OI Endorsement calls for the two primary co-insurers to share the costs by the method provided in Paragraph d, *see infra*.

Unlike the original language in the Generali Policy, Paragraph d of the OI Endorsement directs that co-primary insurers must split defense costs. It maintains the original language that indemnity costs will be allocated by equal shares or by a ratio based on each policy's limits, depending on the language of the other primary policy.

> "**d. Method of Sharing**
> Defense expenses will be shared equally among primary insurers. For indemnity, if the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer will contribute equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers."
>
> (Docket No. 34-3 at 3).

*Admissibility of the OI Endorsement*

Commerce argues that Generali has not proven that the OI Endorsement was made part of the Generali Policy, and that I should apply that policy's original language to determine priority of coverage between the insurers. Whether the OI Endorsement was made part of the Generali Policy and its effective date are critical because if the OI Endorsement issued after the Kampa Action accrued then it would not be applicable to this dispute. Similarly, if the OI Endorsement was never made part of the Generali Policy then I would apply the Policy's original Other Insurance provision.

I would be inclined to agree that Generali has not substantially authenticated the OI Endorsement under Fed. R. Evid. 901(a) for purposes of summary judgment if Commerce had not already made a judicial admission that the Generali Policy includes the OI Endorsement in its Answer to the First Amended Complaint.

According to its Common Policy Conditions, the Generali Policy's terms "can be amended or waived only by endorsement issued by us [Generali] and made a part of this policy."   (Docket No. 34-2 at 25).  Although the Generali Policy does not define how an amendment can be "made a part of the policy," it is clear that an endorsement must be issued.  The only evidence that Generali has provided that the OI Endorsement was issued is an affidavit from its Vice President of Claims, who stated that "based on my review of Generali's records maintained in the ordinary course of its business with regard to this Policy, the OI Endorsement became effective and was made a part of the Generali Policy in March 2018."   (McGinley Aff. ¶ 4, Docket No. 34-1).  The Affidavit was not based on McGinley's personal knowledge, nor did it provide any further facts or exhibits about the records that he examined.  The document purporting to be the OI Endorsement does not contain the effective date of change, a policy number, or the insured's name, indicia that are all

present in a separate endorsement Generali issued for the same HomeAway policy.  (*Compare* OI Endorsement at Docket No. 34-4 *with* the Retroactivity Endorsement at Docket No. 34-3).

Nonetheless, Commerce has already admitted that the language in the OI Endorsement is part of the Generali Policy.  Generali alleged that its policy included the OI Endorsement in the First Amended Complaint and provided the exact language of the OI Endorsement it now seeks to apply to determine priority of coverage, and Commerce admitted that the Generali Policy contained that language in its Answer.  (*See* First Amended Complaint and Answer to Amended Complaint ¶ 13, Docket Nos. 19, 22).

"A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."  *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.*, 976 F.3d 58, 61 (1st Cir. 1992) (citing *Bellefonte re Insurance Co. v. Argonaut Insur. Co.*, 757 F.2d 523, 528 (2d Cir. 1985).  "Unlike ordinary admissions, which are admissible but can be rebutted by other evidence, judicial admissions are conclusive on the party making them. Because of their binding consequences, judicial admissions generally arise only from deliberate voluntary waivers that expressly concede for the purposes of trial the truth of an alleged fact."  *U.S. v. Belcufine*, 527 F.2d 941, 944 (1st Cir. 1975).

Judges enjoy "broad discretion" to excuse judicial admissions in appropriate cases in order to support "considerations of fairness and the policy of encouraging judicial admissions."  *Id*.; *see also Coral v. Gonse*, 330 F.3d 997, 998 n.1 (4th Cir. 1994) ("If the District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in is discretion, relieve the party of its otherwise binding consequence."); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997)*; Rentokil, Incorporated-Tropical Plant Services v. Creative Plantscapes*, 202 F.3d 259 (4th Cir. 1999) (excusing party treating statement

made in context of asking for a continuance as a binding admission because it was not made in the context of litigating a substantive issue).  For example, courts may relieve a party from the consequences of an admission to allow the party to allege inconsistent facts in alternative pleadings, where the judicial admission concerns a legal conclusion or theory rather than evidentiary fact, or where the fact being admitted to is unclear. *Id*; *Schott* at 62; *Harrington v. City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010).

No use of discretion is warranted here. Whether Generali timely issued the OI Endorsement is a fact that could be established by evidence about the drafting and transmission of the Endorsement, not a legal theory or conclusion; the scope of the language in the First Amended Complaint was clear, so Commerce's admission was unambiguous; and Commerce has not shown why fairness concerns or the policy supporting judicial admissions override the prejudice that Generali would incur if I allowed Commerce to withdraw the admission.  If Commerce was unsure whether the OI Endorsement had been timely made part of the Generali Policy, it could have denied the corresponding allegation in the First Amended Complaint or answered that it lacked adequate knowledge to respond, or it could have sought to amend its answer before summary judgment.  Either action could have preserved this issue for summary judgment.  In fact, allowing Commerce to retreat from its admission that the OI Endorsement was made part of the Generali Policy breaks with similar First Circuit precedent.  In *Pruco Life Insurance Co.*, the First Circuit held that an insured's trustee's argument that an insurer was not entitled to rescind a life insurance policy based on material misrepresentations about the insured's health in the application because the insurer had not attached the application when it issued the policy was barred because the trustee had already admitted that the application was attached to the policy in his answer to the second amended complaint. *Pruco Life Ins. Co. v. Wilmington Trust Co.*, 721 F. 3d 1, 11 (1st Cir. 2013).

Accordingly, I find that the OI Endorsement was made a part of the Generali Policy before the underlying cause of action in the Kampa Action accrued and will compare the language of the Generali Policy as amended by the OI Endorsement to the Commerce Policy language to determine priority of coverage.

***Priority of Coverage Determination***

Both the Commerce and Generali Policies purport to be excess insurance under their respective "Other Insurance" clauses. Massachusetts law provides that where excess "Other Insurance" clauses conflict, they are mutually repugnant and both insurers must contribute to the loss, regardless of other language in the policies. *Mission Ins. Co. v. U.S. Fire Ins. Co.*, 401 Mass. 492, 499 (1998). To hold otherwise and allow both insurers to negate coverage would deny the insured the benefit of his bargain twice over. *See id.* at 498-99. *Mission* also set out how to allocate contribution between the insurers: "*in the absence of language controlling the issue*, the better approach [on the matter of percentage of contribution] is to require the insurers to contribute equally until the policy with the lower limit is exhausted." *Id*. at 500 (emphasis added).

The SJC revisited and affirmed the *Mission* approach for determining priority of coverage between primary insurance policies containing excess "other insurance" clauses in 2017. *Great Divide Ins. Co. v. Lexington Ins. Co.*, 478 Mass. 264, 268 (2017); see also *United States Fire Insur. Co. v. ACE American Ins. Co.*, 2015 WL 12683976 at *3-5 (D. Mass.) (applying *Mission* to conflicting "Other Insurance" clauses, finding the clauses mutually repugnant, and that both parties must contribute equally because the policies had identical policy limits).

Here, both policies contain identical language purporting to provide excess coverage if another insurance policy applies, triggering *Mission*:

- (Generali Policy) "This insurance is excess over . . . other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy." (OI Endorsement Section 4.b.(1)(d), Docket No. 34-4 at 1).
- (Commerce Policy) "This insurance is excess over except other valid and collectible insurance written specifically to cover as excess over the limits of liability that apply in this policy." (Section II. Conditions, Docket No. 34-7 at 37).

Neither the Generali Policy nor the Commerce Policy was specifically written as excess insurance for the other, so both policies purport to be excess insurance according to their Other Insurance provisions. Per *Mission*, since the two Other Insurance provisions conflict, they are mutually repugnant, and Commerce and Generali are primary co-insurers.

Under *Mission*, two excess insurers must contribute in equal amounts unless there is controlling language in the insurance contracts. Unlike either of the excess "Other Insurance" provisions at issue in *Mission*, here one of the policies explicitly allocates contribution costs and one does not. The Commerce Policy does not provide a method to allocate contribution when multiple insurers claim to be excess insurers, but the Generali Policy does:

> "**4.c. Co-Primary Insurance**
> If this insurance is primary and any of the other insurance is also primary, then we will share with that other insurance by the method described in Paragraph d. below. If this insurance is excess and the other insurance purports to be excess by virtue of competing "other insurance" clauses similar to the clause set forth in Section 4.b. above, then those clauses are mutually repugnant, resulting in co-primary insurance that is shared by the method described in Paragraph d. below."
>
> "**4.d.  Method of Sharing**
>  Defense expenses will be shared equally among primary insurers. For indemnity, if the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer will contribute equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers."
>
> (Docket No. 34-3 at 3).

The Generali Policy provides that defense costs shall be divided equally and provides two possible methods for allocating indemnity costs, if applicable. If the other insurance permits contribution by equal shares, then each policy will contribute equally until it reaches it policy limit or no less remains. If the other insurance does not permit contribution by equal shares, then each insurer's share of indemnity costs shall be based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers. (Subsection D. Method of Sharing, Docket No. 34-4 at 2).

In accordance with the precept that an insurance contract should be "interpreted 'according to the fair and reasonable meaning of the words in which the agreement of the party is expressed,'" the Court should apply the allocation scheme provided in the Generali Policy. (*Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London*, 449 Mass. 621 (2007) (citations omitted). Under this scheme, both Generali and Commerce must pay an equal share of defense costs in the Kampa Action. This means that Commerce must reimburse Generali for 50% of the defense costs it has already incurred and contribute 50% of any future costs.

As to indemnification, because the Commerce Policy does not permit contribution by equal shares, should Gale be found liable in the Kampa Action each insurer's share will be based on the ratio of its applicable insurance limit to the total applicable limits of both insurers. The Generali Policy limit is $1,000,000 per occurrence; the Commerce Policy limit is $600,000 per occurrence; together the policies afford $1.6 million in coverage. Generali's ratio of its policy limit to the total limits of both insurers ($1,000,000: $1,600,000) is 62.5%. Commerce's ratio ($600,000: $1,600,000) is 37.5%. Therefore, for the purposes of determining priority of coverage between the insurers only, Generali will pay 62.5% of any indemnity costs up to its

$1,000,000 policy limit and Commerce will pay 37.5% of any indemnity costs up to its $600,000 policy limit.

***Attorney's Fees***

Massachusetts generally follows the American Rule, which bars recovery of attorney's fees and costs in the absence of a specific statute or court rule. *Preferred Mut. Ins. Co. v. Gamache*, 426 Mass. 93, 97 (1997). However, Massachusetts has carved out an exception which allows *an insured* "to recover reasonable attorney's fees and expenses where the insurer refuses to defend, and its obligation to do so is subsequently established." *Id.* (emphasis added).

The *Gamache* exception does not extend to actions to establish an insurer's duty to indemnify. *Wilkinson v. Citation Ins. Co.*, 447 Mass. 663, 669- 672-73 (2006). Nor does it extend to suits brought by an insurer, rather than the insured. *John T. Callahan & Sons, Inc. v. Worcester Ins. Co.*, 453 Mass. 447, 449-52 (2009). In *John T. Callahan & Sons*, the SJC declined to extend *Gamache* to award attorney's fees to an insured and its insurer who brought a joint declaratory judgment action to establish that the insured's second insurer also had a duty to defend the insured in an underlying tort action, and where the plaintiff insurer had honored its contractual obligation and provided the insured with a legal defense. In doing so, the SJC considered and rejected a Maryland Court of Special Appeals decision which presented facts identical to this case. *See Travelers Indem. v. Insurance Co. of N. Am.*, 69 Md.App. 664, 519 (1987). There, the Maryland court held that an insurer-plaintiff could recover attorney's fees resulting from a declaratory judgment action establishing that the defendant insurer had wrongfully failed to defend its insured. *Id.* at 451. The SJC did not adopt the Maryland court's reasoning, finding that there was "no good policy reason" to expand *Gamache* to insurers because the "policy [was] designed to protect the insured's right to receive the full benefit of its

insurance contract," not to "punish wrongdoers or to reward those who act responsibly." *Id*. at 450.

Because an insurer is not entitled to recover attorney's fees for a declaratory judgment action to establish another insurer's duty to indemnify or defend a shared insured, Generali's motion for attorney's fees is denied.

## Conclusion

For the reasons stated, Generali's Motion for Summary Judgment regarding priority of coverage (Docket No. 33) is ***granted, except as to the recovery of attorney's fees and costs***.  The Court will set a status conference in the coming weeks to determine a scheduling order for the second phase of the action, if necessary.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**